*Motor Vehicle Administration v. Paul McGuire Styslinger*
No. 53, September Term 2016

*Motor Vehicle Administration v. Robert Allen Krafft*
No. 52, September Term, 2016


**Maryland Vehicle Law – Driver's licenses – Administrative Remedies – Implied Consent, Administrative Per Se Law – Test Refusal.** Under the State's implied consent, administrative per se law, if an individual detained under suspicion of drunk driving refuses to submit to a breath test for blood alcohol concentration, the individual's driver's license is suspended. The individual may challenge the validity of the suspension at an administrative hearing. At such a hearing, the Motor Vehicle Administration ("MVA") must show that the officer who requested the licensee to submit to the test had reasonable grounds to believe that the licensee was driving (or attempting to drive) while impaired, that there was evidence of alcohol use, that the officer provided the licensee with the appropriate advice of rights in requesting a test, and that the licensee refused to take the test. The MVA need not prove that the licensee actually was driving (or attempting to drive) while impaired, so long as the officer had a reasonable belief that the licensee was doing so. Maryland Code, Transportation Article, §16-205.1.

Circuit Court for Somerset County
Case No. 19-C-16-017845

Circuit Court for Montgomery County
Case No. 412953

Argument: February 3, 2017

IN THE COURT OF APPEALS
OF MARYLAND

Nos. 52 & 53

September Term, 2016

MOTOR VEHICLE ADMINISTRATION

V.

ROBERT ALLEN KRAFFT

MOTOR VEHICLE ADMINISTRATION

V.

PAUL MCGUIRE STYSLINGER

Barbera, C.J.
Greene
Adkins
McDonald
Watts
Hotten
Getty,

JJ.

Opinion by McDonald, J.

Filed: April 21, 2017

As part of the effort to detect drunk drivers and keep them off the State's roadways, the General Assembly has enacted a statute known as "the implied consent, administrative per se law."[1] That law authorizes a law enforcement officer who believes that an individual has been driving (or attempting to drive) while impaired by alcohol to ask the individual to take a breath test for blood alcohol concentration. If the individual refuses, the individual's driving privileges in Maryland are automatically suspended for a time period specified in the statute.

The law allows an individual whose driving privileges are suspended under the implied consent, administrative per se law to challenge the suspension at an administrative hearing. The statute limits the issues that may be contested at such a hearing. In a test refusal case, those issues ordinarily are: (1) whether the officer had reasonable grounds for believing that the individual was driving (or attempting to drive) while impaired, (2) whether there was evidence of alcohol use by the individual, (3) whether the officer properly advised the individual in accordance with the statute when requesting the breath test, and (4) whether the individual refused the test.

These two cases concern administrative hearings in test refusal cases. In each case, the administrative law judge ("ALJ") overturned the suspension on the ground that, while it was undisputed that the individual was under the influence of alcohol when the individual was detained by a law enforcement officer, it was not established, by a preponderance of

_____

[1] Maryland Code, Transportation Article, §16-205.1.

the evidence, that the individual had actually been driving (or attempting to drive) at that time.

We hold that, in a test refusal case, there is no requirement that the Motor Vehicle Administration ("MVA") prove that the individual was actually driving (or attempting to drive) while under the influence of alcohol. Rather, the relevant question is whether the officer had *reasonable grounds to believe* that that the individual was doing so. In one of these cases, the ALJ clearly found that the officer had reasonable grounds, and thus the suspension should have been upheld. In the other case, the ALJ's finding on the issue of reasonable grounds was at best ambiguous, and we remand the case for clarification.

## I

### Background

**A.    *The Implied Consent, Administrative Per Se Law***

Every state has enacted some form of an implied consent law as part of its strategy to combat drunk driving. *See Missouri v. McNeely,* 133 S.Ct. 1552, 1566 (2013). The Maryland implied consent, administrative per se law appears in Maryland Code, Transportation Article ("TR"), §16-205.1. That law authorizes a law enforcement officer to request a suspected drunk driver to submit to a chemical test to determine blood alcohol content in certain circumstances.[2] If the test shows a blood alcohol concentration above a

---

[2] The statute also covers impairment due to other drugs. However, as these two cases both involve suspected impairment due to alcohol, for simplicity we shall refer to impairment due to alcohol consumption in describing the law.

2

certain amount, or if the individual refuses to take the test, an administrative suspension of the individual's driving privileges follows.

*Implied Consent*. As to implied consent, the statute provides that anyone who drives (or attempts to drive) a motor vehicle in Maryland "is deemed to have consented" to take a breath test to determine blood alcohol concentration "if the person should be detained on suspicion of driving or attempting to drive while under the influence of alcohol." TR §16-205.1(a)(2).[3] Although the statute deems all motorists in Maryland to have consented to take a breath test, it nonetheless allows an individual detained under suspicion of drunk driving to elect at that time whether or not to take the test. TR §16-205.1(b).[4] Thus, while consent is implied, it may be withdrawn. But a refusal to take the test has consequences. That is where the "administrative per se" aspect of the statute comes in.

*Administrative Per Se*. At the time of the events underlying these cases, a refusal to take the test resulted in an automatic administrative license suspension of 120 days for the first such refusal, and in a suspension of one year for a second or subsequent test refusal. TR §16- 205.1(b)(1)(i)3, (b)(1)(ii)3 (2015).[5] The alternative, of course, would be for the

---

[3] The statute also provides for the use of a blood test, although the use of that test is limited to specified circumstances. *See* Maryland Code, Courts & Judicial Proceedings Article, §10-305(a).

[4] The individual does not have the option of refusing the test if he or she was involved in a motor vehicle accident resulting in death or a life threatening injury of another person. TR §16-205.1(c).

[5] The General Assembly subsequently increased the length of the various administrative suspensions provided in the statute. Chapter 512, Laws of Maryland 2016.

individual to take the test. If the individual does so, the test result will either carry a lesser period of administrative suspension or no suspension at all.[6] In either case, a suspension may be modified in favor of a restricted license that allows the individual to drive for employment, education, or similar purposes. TR §16–205.1(o), (p).

Thus, the statute provides an incentive to take the test, at least in terms of the potential administrative sanction.[7] The automatic suspension for a test refusal, and the greater sanction compared to an adverse test result, are designed to encourage drivers to take the breath test, so that impaired drivers may be detected and removed from the roadways in the interest of safety. *Motor Vehicle Administration v. Deering*, 438 Md. 611, 616 (2014).

*Procedure and Appeal.* Once a law enforcement officer has detained a suspected drunk driver, the officer is to advise the detainee, among other things, of the possible

---

In the case of a test refusal, the suspension for a first offense is now 270 days and, for a second or subsequent offense, two years. TR §16–205.1(b)(1)(i)5, (b)(1)(ii)5.

[6] At the time of the events underlying these cases, a test result showing a blood alcohol concentration above .08 would result in an administrative suspension of between 45 days and 180 days, depending on the level of alcohol concentration in the person's blood and whether it was a first or subsequent offense. TR §16–205.1(b)(1)(i)1-2, (b)(1)(ii)1-2 (2015). Those potential suspensions have since been increased to between 180 and 270 days. Chapter 512, Laws of Maryland 2016. In addition, the law provides for longer suspensions if the individual was involved in a motor vehicle accident resulting in death – a circumstance in which a test refusal is not an option. *See* TR §16–205.1(b)(1)(i)1-4, (b)(1)(ii)1-4.

[7] Any administrative sanction for a test refusal or a failed test is independent of any criminal proceedings that may result from whatever incident led a law enforcement officer to request a person suspected of drunk driving to take a chemical test. TR §16–205.1(m). However, upon conviction of a violation of the Maryland Vehicle Law arising out of the same incident, there may be additional administrative sanctions. TR §16–205.1(l).

4

administrative sanctions for a refusal to take the breath test and for test results that show a blood alcohol concentration above certain levels. TR §16–205.1(b)(2). Typically, the officer satisfies this requirement by reading, and providing the driver with, a form created by the MVA for that purpose, known as the DR–15 form (Advice of Rights). That form sets forth a detained driver's options under the implied consent, administrative per se statute, the consequences of failing to take the breath test and of test results that indicate certain levels of blood alcohol concentration, and other rights and consequences, including the right to an administrative hearing. The officer indicates on the form the election made by the individual and certifies by signature that the individual has been advised of those rights. There is also a space on the form for the individual to confirm his or her election by signature.

If the individual refuses to take the test or fails the test, the officer is to serve an order of suspension on the individual, confiscate his or her license, and issue a temporary license that may be used for a maximum of 45 days or until the individual's license is formally suspended after a license suspension hearing. TR §16–205.1(b)(3). The MVA has created another form, known as the DR-15A form (Officer's Certification and Order of Suspension), for this purpose. On that form, the officer summarizes, under penalty of perjury, the facts that led the officer to suspect the individual of drunk driving and records other information concerning the individual and the incident. The individual's copy of the form serves as a temporary license pending any hearing.

If the individual requests an administrative hearing to contest the suspension, it is to be conducted under the contested case provisions of the State Administrative Procedure

5

Act. TR §§16–205.1(f), 12-206; Maryland Code, State Government Article ("SG"), §10-201 *et seq.* Under a delegation from the MVA, the hearing is conducted by an ALJ of the Office of Administrative Hearings ("OAH"). TR §12–104(e); COMAR 11.11.02.07. The statute enumerates the specific issues that can be raised at the license suspension hearing. In a test refusal case, those issues are usually limited to: (1) whether the officer had reasonable grounds for believing that the individual was driving (or attempting to drive) while impaired, (2) whether there was evidence of alcohol use by the individual, (3) whether the officer properly advised the individual in accordance with the statute when requesting the breath test, and (4) whether the individual refused the test. TR §16–205.1(f)(7)(i)1-4[8]; *see also Motor Vehicle Administration v. McDorman,* 364 Md. 253, 259-60 (2001).

At the conclusion of the administrative hearing, if the ALJ is persuaded that the criteria for a suspension under the implied consent, administrative per se law are satisfied, the ALJ is to uphold the license suspension. TR §16–205.1(f)(8). If the ALJ finds that the criteria have not been met, the ALJ takes "no action" − *i.e.,* overturns the suspension. In either case, the ALJ's decision is the final decision of the MVA. COMAR 11.11.02.07A.

___

[8] If the person took a chemical test, the administrative hearing may also concern the results of the test. TR §16-205.1(f)(7)(i)5-6. In a case involving an individual who holds a commercial instructional permit or a commercial driver's license, the hearing may concern whether the individual held such a permit or license or was operating a commercial motor vehicle. TR §16-205.1(f)(7)(i)7. Finally, under a recent amendment, in appropriate cases, the hearing may concern whether the individual was involved in a motor vehicle accident that resulted in death. TR §16-205.1(f)(7)(i)8; *see* Chapter 247, Laws of Maryland 2015.

6

The OAH has apparently developed a form on which an ALJ may document the ALJ's findings on the relevant issues.

Either party may seek judicial review pursuant to the State Administrative Procedure Act. TR §12–209; SG §10-222. After review by a circuit court, any further appeal must be pursued by a petition for writ of *certiorari* directly to this Court. Maryland Code, Courts & Judicial Proceedings Article ("CJ"), §12-305.

*The Predicate.* A law enforcement officer has no authority to arbitrarily request an individual – even one who is driving a car – to take a breath test or face legal consequences. As the above outline of the statute indicates, there is a predicate for a test request that triggers the operation of the implied consent, administrative per se law: the law enforcement officer must have detained the individual upon a reasonable suspicion of drunk driving. Thus, a suspension for a test refusal is to be upheld only if the law enforcement officer who detained the suspected drunk driver had "reasonable grounds to believe" that the individual was driving (or attempting to drive) while impaired by alcohol.

These cases concern application of that predicate.

**B.**     ***Facts and Proceedings***

1.     MVA v. Styslinger

*Circumstances of Test Refusal*

The essential facts are undisputed. On March 28, 2015, at approximately 1:10 a.m., Officer Alex Pockett of the Gaithersburg City Police Department responded to a report that a driver was slumped over his steering wheel at a location on Washington Boulevard in Gaithersburg. Upon his arrival, Officer Pockett found Paul M. Styslinger asleep in the

7

driver's seat with the motor running. Officer Pockett detected a moderate odor of alcohol on the breath of Mr. Styslinger who, upon waking, admitted that he had been drinking alcohol that evening.

Officer Pockett asked Mr. Styslinger to perform some standard field sobriety tests, which Mr. Styslinger was unable to do to the officer's satisfaction. Officer Pockett then detained Mr. Styslinger and transported him to the Gaithersburg police station for further investigation.

At the police station, Officer Pockett advised Mr. Styslinger of his rights by reading him the DR-15 form. He asked Mr. Styslinger if he was willing to undergo a blood alcohol concentration test. Mr. Styslinger refused to submit to a test. Officer Pocket confiscated Mr. Styslinger's driver's license, and issued an order of suspension together with a temporary license on the DR-15A form. Mr. Styslinger made a timely request for an administrative hearing concerning the suspension.

*The Administrative Hearing*

The administrative hearing was conducted by an ALJ on July 31, 2015. As is typically the case, the MVA's evidence consisted entirely of documents, including the forms related to Mr. Styslinger's encounter with Officer Pockett on March 28, 2015. Among the documents submitted were the DR-15A form (Officer's Certification and Order of Suspension) and the DR-15 form (Advice of Rights), which documented Mr. Styslinger's test refusal and which had been signed by both the officer and Mr. Styslinger. On the DR-15A form, Officer Pockett stated under penalty of perjury that he had reasonable grounds to believe that Mr. Styslinger had been driving (or attempting to drive)

8

while under the influence of alcohol and briefly summarized his encounter with Mr. Styslinger that evening. At the hearing the ALJ also accessed Mr. Styslinger's driving record, which reflected a prior test refusal and suspension 15 years earlier.

After the MVA records were admitted in evidence, Mr. Styslinger presented his case through the testimony of himself and Alisa Cottone, with whom he lived and with whom he had a child. Mr. Styslinger admitted that he had parked his car before visiting a gym and drinking at two bars that evening, but denied that he had attempted to drive after doing so. He said that he had contacted the Uber car service for a ride home and was waiting in his car with the motor running in order to stay warm when he fell asleep until he was wakened by the officer. There was no direct evidence from Mr. Styslinger's phone records or Uber documenting that he had contacted Uber. However, Ms. Cottone testified that he had called her that night and told her that he was going to use Uber to get home.[9]

At the conclusion of Mr. Styslinger's evidence, his counsel asked the ALJ to take no action, arguing that there was no evidence that Mr. Styslinger had driven or attempted to drive his car while impaired.[10] The ALJ was unpersuaded at that point that he should

---

[9] During closing argument, the ALJ permitted Mr. Styslinger's counsel to introduce a more detailed police incident report concerning Officer Pockett's encounter with Mr. Styslinger, which was consistent with the report provided to the MVA but which additionally reported that Mr. Styslinger had told the officer that night that he was expecting "a friend" to pick him up.

[10] Counsel relied in part on this Court's decision in *Atkinson v. State*, 331 Md. 199 (1993). In *Atkinson*, this Court held, in the context of a criminal prosecution for driving while intoxicated, that there was a reasonable doubt whether an intoxicated individual found asleep in a parked car with the motor off had driven (or attempted to drive) the car,

9

"grant a no action" and continued the case in order to have Officer Pockett subpoenaed "to hear a little bit more from the officer about what the officer recollects that he observed."

Ultimately, Officer Pockett did not testify in person and, at a continuation of the hearing on November 12, 2015, the ALJ rendered a decision based on the evidence previously adduced.[11] At that time, the ALJ took no action on the suspension. The ALJ explained his decision as follows. He first found that Officer Pockett "had reasonable grounds to believe that [Mr. Styslinger] was driving or attempting to drive a motor vehicle while under the influence of alcohol" based on the officer's report that he found Mr. Styslinger asleep in his car with the motor running, that Mr. Styslinger's breath smelled of alcohol, and that Mr. Styslinger failed the field sobriety tests. The ALJ also found that Officer Pockett had properly advised Mr. Styslinger of the potential administrative sanctions when he requested Mr. Styslinger to take a breath test and that Mr. Styslinger had refused to submit to the test.

However, the ALJ decided that no action was the appropriate disposition because "the MVA has not met its burden of proving by a preponderance of the evidence [that Mr. Styslinger] drove or attempted to drive." In making that finding, the ALJ referred to the

---

as opposed to simply sought shelter in it. Accordingly, the Court reversed the criminal conviction in that case.

[11] In the interim, Mr. Styslinger had been acquitted in the District Court of Maryland of criminal charges based on the same incident for driving while under the influence or impaired by alcohol. As noted earlier, the disposition of criminal charges related to a particular incident does not affect the validity of an administrative suspension arising out of that same incident. TR §16-205.1(m).

10

testimony of Mr. Styslinger that he was in the car only for purposes of shelter and the testimony of both Mr. Styslinger and Ms. Cottone that he had contacted Uber for a ride home.[12] The ALJ characterized his decision as a "close call," given that the car engine was running at the time of the discovery of Mr. Styslinger by the officer. On the OAH form for such hearings, the ALJ included written "Findings of Facts" consistent with his oral decision.[13]

*The Circuit Court Ruling*

The MVA sought judicial review of the ALJ's decision in the Circuit Court for Montgomery County. The MVA argued that it need only show that Officer Pockett had reasonable grounds to believe that Mr. Styslinger was driving (or attempting to drive) while impaired – and need not show that Mr. Styslinger had actually done so – in order to support an administrative license suspension in a test refusal case. After conducting a hearing, the Circuit Court affirmed the ALJ's decision. The court acknowledged that the statute limited

---

[12] The ALJ also opined that, while "not necessary to the decision," he had also weighed the adverse effect of a license suspension on employment against the potential effect on highway safety, noting that Mr. Styslinger had not been convicted or suspended for drunk driving within the past five years. As the record contained no information concerning Mr. Styslinger's employment, this appeared to be a consideration of general policies underlying the implied consent, administrative per se statute.

[13] On the OAH form, using similar language to his oral comments, the ALJ filled in the boxes explaining why the officer had reasonable grounds to believe that Mr. Styslinger had been driving (or attempting to drive) while impaired and why there was evidence of Mr. Styslinger's use of alcohol. The ALJ also checked the "yes" box next to the questions whether the officer had advised Mr. Styslinger of his rights and whether Mr. Styslinger refused to take the test.

the issues in a test refusal case, but believed that the MVA must prove, as "a prerequisite to applying the implied consent law," that the licensee was driving (or attempting to drive).

We subsequently granted the MVA's petition for a writ of *certiorari* to review whether the ALJ applied the correct legal standard in this case.

2.      MVA v. Krafft

*Circumstances of Test Refusal*

On October 10, 2015, at approximately 9:14 p.m., Trooper John Dize of the Maryland State Police responded to a report of an accident in front of a residential address in Princess Anne in Somerset County. Upon his arrival, Trooper Dize found an empty vehicle with a Maryland license plate. He ran the registration record of the vehicle and learned that it was registered to Mr. Krafft, who resided at that address.

Trooper Dize approached the house and observed that the door was open with Mr. Krafft "passed out on his couch." Trooper Dize began to question Mr. Krafft, who could barely stand up. Trooper Dize also noted that Mr. Krafft had a strong odor of alcohol on his breath, slurred speech, and red and glassy eyes. During their conversation, Mr. Krafft admitted to Trooper Dize that he had been drinking, and Trooper Dize asked him to take a breath test for blood alcohol concentration. Mr. Krafft was provided with the DR-15 form (Advice of Rights) and refused the requested breath test for blood alcohol concentration. Trooper Dize then confiscated Mr. Krafft's license and completed the DR-15A form (Officer's Certification and Order of Suspension), which Mr. Krafft declined to sign.

12

*The Administrative Hearing*

Mr. Krafft requested an administrative hearing concerning the suspension. At the hearing on February 10, 2016, the ALJ accepted documents submitted by the MVA in support of the suspension – in particular, Mr. Krafft's driving record, the DR-15 form and the DR-15A form. Mr. Krafft did not testify or challenge the substance of Trooper Dize's description of the events of that evening.

Mr. Krafft's lawyer argued that the MVA documents and, in particular, the trooper's statement of reasonable grounds, were insufficient to support the suspension. He argued that, even if there were reasonable grounds to believe that Mr. Krafft was impaired or under the influence of alcohol, Trooper Dize had not set forth reasonable grounds to believe that Mr. Krafft was driving (or attempting to drive) while he was in that condition.

The ALJ stated at the hearing that she agreed that the Officer's Certification provided evidence that Mr. Krafft had consumed alcohol that evening. However, she believed that it was insufficient to establish, by a preponderance of evidence, that Mr. Krafft had been driving. The ALJ stated:

> Despite the vehicle being owned by Mr. Krafft, based on the information in this Certification it could have been somebody else driving. It could have been Mr. Krafft driving before he consumed alcohol. I just can't conclude that the preponderance of the evidence establishes the MVA's case and because of that I'm going to take no action.

The ALJ8-27 documented her decision on the OAH form as follows. In the block concerning whether Trooper Dize "had reasonable grounds to believe" that the Mr. Krafft was driving or attempting to drive a motor vehicle while under the influence or impaired

13

by alcohol, she entered "n/a." In the block concerning whether there was evidence of the use of alcohol, she also entered "n/a." In response to questions on the form as to whether Trooper Dize had advised Mr. Krafft of the administrative sanctions, whether the trooper had asked Mr. Krafft to take a test, and whether Mr. Krafft had refused to take the test, the ALJ checked "no" in each instance. Finally, in a large block entitled "Other Facts (if needed)" the ALJ reiterated her oral statement at the hearing that the MVA had not demonstrated that Mr. Krafft had been driving while impaired by a "preponderance of the evidence."

### *The Circuit Court Ruling*

The MVA sought judicial review of the ALJ's decision in the Circuit Court for Somerset County. After conducting a hearing, the Circuit Court ruled from the bench and affirmed the ALJ's decision on the grounds that there was no error of law and that the court was not persuaded that Mr. Krafft had been driving.

We subsequently granted the MVA's petition for a writ of *certiorari* to review whether the ALJ applied the correct legal standard in this case.

## II

## Discussion

### A. *Standard of Review*

In reviewing a decision of an administrative agency, we directly evaluate that decision under the same standard of review as a circuit court. *Motor Vehicle Administration v. Shea*, 415 Md. 1, 15 (2010). A court that reviews an agency decision assesses whether there is substantial evidence in the record to support the decision and

14

whether the decision is based upon an error of law. *Id*. at 14-15. This standard accords less deference to an agency's legal conclusions than to its fact findings, although a reviewing court may accord some weight to an agency's interpretation and application of a statute that it administers. *Id*.

### B.   *Legal Standard for License Suspension in Test Refusal Cases*

We granted *certiorari* in both of these cases to consider whether the ALJs applied the correct legal standard in deciding to overturn the administrative license suspensions. In both cases the issue is whether, in a test refusal case, the MVA is required to show that the individual was driving (or attempting to drive) while impaired – as opposed to showing only that the law enforcement officer had "reasonable grounds to believe" that the individual was doing so. This is a question of law.

It may be tempting to treat an administrative hearing under TR §16-205.1(f) as a civil analog to a criminal DUI prosecution, in which the MVA would be required to make the same showing as the criminal prosecutor, but bear a lesser burden of proof. In other words, under this conception, the MVA would be required to prove that the individual was driving (or attempting to drive) while impaired, but need only do so by a preponderance of the evidence while a criminal prosecutor would be required to make the same showing beyond a reasonable doubt. However, in a test refusal case, such a conception of the administrative hearing is wrong on at least two counts.

*Proof of Predicate for Test Request v. Proof of Actual Driving*

First, there is no requirement that the MVA establish that the individual was actually driving (or attempting to drive). In a test refusal case, the gravamen of the offense is the

15

refusal to take the test. Usually, there is no dispute that the individual refused to take the test. Instead, the validity of the suspension often turns on whether the officer was authorized to ask the individual to take the test in the first place. Thus, the issue in a test refusal case is usually whether the predicate for the test request – *i.e.*, that the officer had "reasonable grounds to believe" that the individual had been driving (or attempting to drive) while impaired – existed at the time the officer made the request. Obviously, the same observations that would lead an officer to have such a reasonable belief are also likely to be evidence that the individual actually drove while impaired, but "reasonable grounds" and conclusive proof can be two different things. And it is important to keep distinct what must be shown.

The plain language of the statute is clear as to what must be shown at a suspension hearing. Under TR §16–205.1(f)(7)(i), the issues to be determined by an ALJ in a test refusal case are: (1) whether the officer had reasonable grounds for believing that the individual was driving (or attempting to drive) while impaired, (2) whether there was evidence of alcohol use by the individual, (3) whether the officer properly advised the individual in accordance with the statute when requesting the breath test, and (4) whether the individual refused the test. A determination of whether the individual actually drove (or attempted to drive) while impaired does not appear on that list. Nothing suggests that there should be additional factors considered beyond those detailed in the statute.

Despite the clarity of this language in subsection (f)(7) of the statute, it might be argued that the issue of actual driving is imported into an administrative hearing by virtue of another provision of the statute – subsection (a)(2). As indicated earlier, that subsection

16

provides that "any person who drives or attempts to drive" in Maryland is subject to the implied consent, administrative per se law. The argument, then, is that there must be proof of actual driving for the statute to apply in the first place.[14] This interpretation of law appears to contemplate that a holder of a Maryland license repeatedly gives implied consent (by driving) and then withdraws it (by parking). Apart from the fact that this interpretation would have the statute flashing on and off even for Maryland license holders who make use of that privilege every day, it would render the statute internally inconsistent. Under this conception of the statute the MVA would *always* have to establish that an individual had been driving (or attempting to drive) at a license suspension hearing, even though that is not one of the issues specified in subsection (f)(7) of the statute for decision at a hearing.

The legislative history of subsection (a)(2) is instructive. The implied consent, administrative per se law was originally enacted in 1969. Chapter 158, Laws of Maryland

---

[14] Some have argued that this Court accepted that premise in *Motor Vehicle Administration v. Atterbeary*, 368 Md. 480 (2002), a test refusal case. In *Atterbeary*, the motorist was discovered slumped behind of the wheel of his car with the key in the ignition and the motor running at a car dealership. After initially agreeing to take a breath test, the motorist later demurred. An ALJ upheld a suspension for test refusal, but the circuit court concluded that there was insufficient evidence of a refusal, given the motorist's assertion he was simply waiting to consult with an attorney. This Court later reversed the circuit court's decision. In the course of its opinion, the Court also considered the motorist's argument, relying on the *Atkinson* decision, that the statute did not apply to him at all because he had not driven his car on a public road, but had simply sought shelter in it. (see footnote 10 above for a description of *Atkinson*). This Court distinguished *Atkinson* and concluded the motorist would have been found to be in physical control of his car under the factors under the analysis in *Atkinson*. The Court did not explicitly consider the question whether it was necessary for the MVA to prove that the motorist had been driving – as opposed to reasonable grounds to believe that he had been doing so. To the extent that the *Atterbeary* decision could be read to suggest otherwise, we disavow that reading.

17

1969, *then codified in* former Article 66½, §92A. In the original iteration of the statute, the predecessor of subsection (a)(2) required that any holder of a Maryland driver's license, as a condition of obtaining or renewing the license, had to explicitly consent to take a chemical test for blood alcohol concentration if detained under suspicion of drunk driving; nonresidents and unlicensed individuals who operated (or attempted to operate) a motor vehicle in Maryland were deemed to have consented to take a test. As originally enacted, the statute gave the MVA discretion to suspend driving privileges in a test refusal case. A few years later, that statute was later recodified in its current location as part of the new Transportation Article. Chapter 14, §2, Laws of Maryland 1977.

In 1981, a number of bills were introduced in the General Assembly to toughen the laws concerning drunk driving. Among those bills was Senate Bill 497 (1981), which proposed to amend the law to eliminate MVA's discretion in test refusal cases and *mandate* a license suspension in such a case. As the bill moved through the General Assembly it was amended to eliminate the express consent provision for Maryland licensees that had appeared in the original law and to substitute an implied consent provision that applied to both Maryland licensees and others – what is now subsection (a)(2). A status report in the legislative file on the various drunk driving bills states that "[t]his amendment brings Maryland into conformity with all other states and closes a loophole which permitted juveniles to escape the chemical test requirement."[15] Legislative Bill File for Senate Bill

_____

[15] Although it is not entirely clear from the legislative file, the reference to "juveniles" may have been a reference to the fact that the law generally prohibited issuing

18

497 (1981). The bill was enacted with that amendment. Chapter 244, Laws of Maryland 1981. Except for later amendments not pertinent here, the same language appears in subsection (a)(2) today.

It is thus evident that the statute has always been intended to apply, at a minimum, to anyone who holds a Maryland driver's license. The 1981 amendment that resulted in the current wording of subsection (a)(2) was not intended to limit the reach of the implied consent, administrative per se law as it pertained to Maryland licensees but rather to close a perceived "loophole" in its reach. As this Court reasoned in *Motor Vehicle Administration v. Loane*, 420 Md. 211, 226 (2011), the significance of subsection (a)(2) is that "the reach of the Statute is broad; that is, the administrative license provisions apply to *any licensed driver …*" *Id.* at 226-27 (emphasis added). Nor was subsection (a)(2) intended to introduce additional issues into an administrative suspension hearing aside from those specified in subsection (f)(7). *See Motor Vehicle Administration v. Aiken*, 418 Md. 11, 31-36 (2011) (prefatory language of subsection (a)(2) relating motorist consent to CJ §10-302 through §10-309 did not permit individual to raise issues under those statutes at suspension hearing).

*Reasonable Grounds v. Preponderance of Evidence*

Second, a showing that an officer had a *reasonable grounds to believe* that something was true is different from proving by a *preponderance of the evidence* that it was true. With respect to the former, the question is whether the officer's belief was

---

driver's licenses to individuals under 18 years old (and thereby obtaining express consent from them), subject to certain exceptions. *See* TR §16-103.

reasonable, in light of the information available to the officer at the time. The latter question involves a weighing of evidence to arrive at the more persuasive conclusion. This Court has interpreted the "reasonable grounds" standard to mean "reasonable articulable suspicion"[16] and to be a lower standard than preponderance of the evidence or probable cause.[17] It is based on the "totality of the circumstances" presented to the officer.[18] For example, in certain circumstances an officer may reasonably infer that an individual was driving while impaired, even though the officer did not witness the individual operating the car. *Motor Vehicle Administration v. Carpenter*, 424 Md. 401 (2012) (officer dispatched to accident scene reasonably inferred that individual who was present at the scene and whose car was involved in accident had been driving while impaired even though there was no direct evidence that the individual had been driving the car).

It is not uncommon in the law for certain actions to be predicated upon "probable cause" or "reasonable suspicion" or "reasonable grounds" while related proceedings might be subject to a heavier burden of proof. For example, in the criminal law context, a judge may issue a search warrant based upon a finding of probable cause that a crime has been committed and that evidence of that suspected crime will be found in the place to be searched. Even if a subsequent criminal prosecution related to the same facts results in an

---

[16] *Motor Vehicle Administration v. Shepard*, 399 Md. 241, 254 (2007).
[17] *Motor Vehicle Administration v. Dove*, 413 Md. 70, 95 (2010); *Motor Vehicle Administration v. Shea*, 415 Md. 1, 19 (2010).

[18] *United States v. Arvizu*, 534 U.S. 266 (2002); *Shea*, 415 Md. at 19.

acquittal, that does not mean that the finding of probable cause was incorrect or that the search warrant was invalid.

To the extent that a preponderance of evidence standard can be said to apply at an administrative license suspension hearing, it is that the MVA must show by a preponderance of the evidence that the officer had reasonable grounds at the time the officer requested the test. This is not the same thing as a showing, by a preponderance of evidence, that the individual was in fact driving (or attempting to drive) while impaired.

*Summary*

As this Court has repeatedly held, the issues at play in a license suspension hearing are limited to the issues enumerated in TR §16-205.1(f)(7)(i). *See, e.g., Motor Vehicle Administration v. Jones*, 380 Md. 164, 177 (2004). In a test refusal case, the MVA is not required to establish that the licensee was *actually* driving (or attempting to drive) while impaired. Rather, the statute requires a showing only that the MVA show by a preponderance of the evidence that the investigating officer had *reasonable grounds to believe* that the licensee was doing so.[19]

---

[19] The Court of Special Appeals expressed this same straightforward interpretation of the statute nearly two decades ago. *See Reid v. State*, 119 Md. App. 129, 138 (1998) ("Whether a motorist *was* driving or attempting to drive while using alcohol is not one of the questions the ALJ is authorized to answer"). In *Reid*, the question before the intermediate appellate court was whether an ALJ's determination in an administrative suspension case based on a test refusal would have a collateral estoppel effect on a drunk driving criminal prosecution.

## C.  *Application to these Cases*

### 1.  MVA v. Styslinger

It was undisputed that Mr. Styslinger had been drinking and that he declined to take a breath test after being advised of the administrative sanctions for a test refusal. Thus, the only remaining issue was whether Officer Pockett had "reasonable grounds to believe [that Mr. Styslinger] was driving or attempting to drive while under the influence of alcohol..." TR §16-205.1(f)(7)(i)1.

The ALJ answered that question directly at the hearing. He found "that the police officer who stopped or detained the licensee had reasonable grounds to believe that the licensee was driving or attempting to drive a motor vehicle while under the influence of alcohol." That should have been the end of the analysis. Instead, the ALJ added an element not required by the statute. In particular, the ALJ stated "I find that the licensee did not drive or attempt to drive a motor vehicle" and later reiterated that "I find that the MVA has not met its burden of proving by a preponderance of the evidence that the licensee drove or attempted to drive." But, in a test refusal case, the statute does not require the MVA to prove, for purposes of upholding a suspension, that the licensee was actually driving (or attempting to drive) a motor vehicle under the influence of alcohol. Rather, the MVA need only show that the investigating officer had reasonable grounds to believe that the licensee was doing so.[20]

---

[20] Mr. Styslinger does not appear to disagree that, in a test refusal case, the MVA must establish only that the officer had reasonable grounds to believe that a licensee was driving (or attempting to drive) while impaired. He asserts that, without a live witness, the MVA failed to make that showing and that the ALJ actually found that MVA's evidence

22

It is undeniable that the ALJ in Mr. Styslinger's case took great care to weigh the evidence before him, even postponing the hearing in an effort to hear directly from the officer. Nevertheless, the premise for much of that effort was legally incorrect. For purposes of the administrative suspension, there was no need to resolve whether Mr. Styslinger had actually driven (or attempted to drive) his vehicle under the influence of alcohol at the time he was found passed out in the driver's seat – only whether Officer Pockett had reasonable grounds for believing that Mr. Styslinger had done so.

Because the ALJ found the officer had "reasonable grounds" – all that was necessary to support Styslinger's suspension – we reverse the order of the ALJ and remand the case for the affirmance of the suspension.

---

was insufficient despite the ALJ's explicit statement that the officer had such reasonable grounds. To accept Mr. Styslinger's arguments, we would either have to hold that the ALJ was clearly erroneous in finding that the officer had reasonable grounds or conclude that the ALJ meant the opposite of what he said. Neither argument is persuasive.

Finally, Mr. Styslinger appears to argue that because TR §16-205.1(a)(2) relates "implied consent" to "any person who drives or attempts to drive," the implied consent, administrative per se law applies only to an individual when that individual is driving or attempting to do so and, thus, that there must be proof of actual driving (or an attempt) for the statute to apply in the first place. This argument was not raised by Mr. Styslinger at the administrative hearing, but apparently was accepted by the Circuit Court although the court noted that there was no law, other than possibly the *Atterbeary* decision, to support the argument. For the reasons set forth in the previous section of this opinion, that argument lacks merit, particularly with respect to a Maryland-licensed driver like Mr. Styslinger. Moreover, at the hearing, Mr. Styslinger himself acknowledged that he had driven his car that day before he visited the bars.

23

2.      MVA v. Krafft

The ALJ in Mr. Krafft's case appears to have made a similar error. At the hearing, the ALJ summarized the facts set forth in the DR-15A form and stated that "I just can't conclude that the preponderance of the evidence establishes the MVA's case and because of that I'm going to take no action."

The ALJ's comments appear to suggest that the ALJ believed that the MVA was required to demonstrate by a preponderance of the evidence that Mr. Krafft had driven (or attempted to drive) his vehicle while under the influence of alcohol. But, as explained above, all that was required was for the MVA to establish that Trooper Dize had reasonable grounds to believe that Mr. Krafft had done so.[21]

Unlike the case with Mr. Styslinger, however, the ALJ in Mr. Krafft's case never made a finding – one way or the other – as to whether Trooper Dize had reasonable grounds

---

[21] Before us, Mr. Krafft conceded that the MVA was not required to prove that he actually drove (or attempted to drive) on the night in question. He interprets the ALJ's reference to a preponderance of the evidence standard as an allusion to SG §10-217, which establishes a preponderance of evidence standard for most contested case proceedings under the State Administrative Procedure Act. He articulates the appropriate standard as "whether the MVA has persuaded the ALJ by a preponderance of evidence that [Trooper Dize] had reasonable grounds … to believe that [Mr.] Krafft was driving while under the influence or while impaired by alcohol." He asserts that the ALJ's cryptic comments at the hearing and later on the OAH form actually applied such a standard and that it was a failure of evidence by the MVA as a result of an "incompetent" investigation, rather than application of an incorrect legal standard, that led to the no action disposition.

As explained in the text of this opinion, in applying a preponderance standard, the ALJ's findings do not appear to analyze the reasonableness of the trooper's belief, but rather address the weight of the evidence as proof of actual driving. For that and for other reasons mentioned in the text, we cannot give the ALJ's remarks the same meaning as Mr. Krafft.

24

for such a belief. She made no statements at the hearing on that issue. On the OAH form on which she documented her decision, the ALJ wrote "n/a" – presumably meaning "not applicable" – in the block concerning whether the trooper had reasonable grounds for such a belief. This may signify that the ALJ found that Trooper Dize lacked reasonable grounds, based on all the evidence available to the trooper at the time that he encountered Mr. Krafft. However, the ALJ also wrote "n/a" in the block concerning evidence of intoxication. Given that it was undisputed that Mr. Krafft was intoxicated, "n/a" may signify that the ALJ thought that both of those issues – reasonable grounds and intoxication – were not relevant or were moot. (Elsewhere on the OAH form, the ALJ herself stated that "Clearly the certification establishes the use of alcohol ….").[22] In other words, it did not matter to the ALJ whether Mr. Krafft was intoxicated or whether the trooper had reasonable grounds for his belief that Mr. Krafft had been driving in that state, in light of the ALJ's conclusion that there was insufficient evidence to prove that Mr. Krafft had actually driven or attempted to drive that evening. If so, the ALJ was mistaken on the law.

Other entries made by the ALJ on the OAH form are equally puzzling. In answering the questions on the form about whether Trooper Dize had advised Mr. Krafft of his rights, whether Trooper Dize had asked Mr. Krafft to take a breath test, and whether Mr. Krafft had refused, the ALJ checked "no" as to each of those questions. Yet the uncontradicted

---

[22] In his brief to us, Mr. Krafft concedes that there were reasonable grounds to believe that he was under the influence of alcohol during his encounter with Trooper Dize, but rather argues that there were not reasonable grounds to believe that he had been *driving* in that condition.

evidence at the hearing – in the sworn DR-15A form (Officer's Certification and the Advice of Rights) – was that Trooper Dize had provided the appropriate advice, that he had requested that Mr. Krafft take a breath test, and that Mr. Krafft had refused. Mr. Krafft did not submit any evidence to the contrary on any of those issues. In her oral remarks at the hearing the ALJ did not address those issues or explain these entries on the OAH form.

The bottom line is that the ALJ's silence at the hearing on the issue of "reasonable grounds" and her use of the term "n/a" in the pertinent block on the OAH form mean that we do not know what the ALJ found with respect to this critical issue. Given the absence of a finding on the issue of "reasonable grounds," we must remand the case for clarification under the standards set forth in this opinion.

## III

## Conclusion

For the reasons set forth above, we hold that, in an administrative license suspension hearing, the only issues to be determined are those enumerated by the statute. In a test refusal case involving suspected alcohol impairment, those issues ordinarily are: (1) whether the officer had reasonable grounds for believing that the individual was driving (or attempting to drive) while impaired, (2) whether there was evidence of alcohol use by the individual, (3) whether the officer properly advised the individual in accordance with the statute when requesting the breath test, and (4) whether the individual refused the test.

In both of these cases, the ALJ went beyond the statute and required the MVA to prove by a preponderance of the evidence that the licensee had actually driven (or attempted to drive) while impaired by alcohol. That was a legal error. In Mr. Styslinger's

26

case, the ALJ made all the findings required to uphold the administrative license suspension and we simply reverse the decision and uphold the suspension.  In Mr. Krafft's case, the ALJ either did not address the relevant issues or made clearly erroneous findings in light of the uncontradicted evidence.  We shall reverse and remand that decision for the ALJ to clarify the decision.

**WITH RESPECT TO NO. 52, JUDGMENT OF THE CIRCUIT COURT FOR SOMERSET COUNTY VACATED AND CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REMAND THE CASE TO THE OFFICE OF ADMINISTRATIVE HEARINGS FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**WITH RESPECT TO NO. 53, JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY REVERSED AND CASE REMANDED TO THE MOTOR VEHICLE ADMINISTRATION FOR ACTION CONSISTENT WITH THIS OPINION.**

**IN EACH CASE, COSTS TO BE PAID BY THE RESPONDENT.**