36 A.3d 439

MOTOR VEHICLE ADMINISTRATION

v.

Dana Eric CARPENTER.

No. 44, Sept. Term, 2011.

Court of Appeals of Maryland.

Jan. 25, 2012.

Leight D. Collins, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore, MD), on brief, for Petitioner.

C. Evan Rollins (Rollins Law Group, Elkton, MD), on brief, for Respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, BARBERA and ALAN M. WILNER (Retired, Specially Assigned), JJ.

BATTAGLIA, J.

Once again we have been called to review the decision of an administrative law judge that suspended a driver's license for refusal to submit to a chemical breath test, following a hear-

ing, pursuant to Section 16–205. 1(f)(8)(i) of the Transportation Article.[1] The Circuit Court for Cecil County, in a similar exercise of judicial review, reversed the suspension, however, having determined that the police officer, who requested the breath test, did not possess reasonable grounds to detain Dana Eric Carpenter, Respondent. The Motor Vehicle Administration, Petitioner, as a result, asks us to consider the following question:

Is a police officer's testimony that a subject had been driving a vehicle involved in a collision, based on the officer's post-crash investigation that included witness statements that the detained suspect had been "traveling at a high rate of speed" and "had struck the car," sufficient to establish reasonable grounds to request an alcohol content test under § 16–205.1(b)(2) [2] of the Transportation Article?

---

1. Section 16–205. 1(f)(8)(i) provides, in pertinent part:

(8) (i) After a hearing, the Administration shall suspend the driver's license or privilege to drive of the person charged under subsection (b) or (c) of this section if:

1. The police officer who stopped or detained the person had reasonable grounds to believe the person was driving or attempting to drive while under the influence of alcohol, while impaired by alcohol, while so far impaired by any drug, any combination of drugs, or a combination of one or more drugs and alcohol that the person could not drive a vehicle safely, while impaired by a controlled dangerous substance, in violation of an alcohol restriction, or in violation of § 16–813 of this title;

2. There was evidence of the use by the person of alcohol, any drug, any combination of drugs, a combination of one or more drugs and alcohol, or a controlled dangerous substance;

3. The police officer requested a test after the person was fully advised, as required under subsection (b)(2) of this section, of the administrative sanctions that shall be imposed; and

4. A. The person refused to take the test[.]

Statutory references Section 16–205.1 of the Transportation Article ("Section 16–205.1") throughout are to Maryland Code (1977, 2009 Repl.Vol.).

2. Section 16–205.1(b)(2) provides, in pertinent part:

(2) Except as provided in subsection (c) of this section, if a police officer stops or detains any person who the police officer has reasonable grounds to believe is or has been driving or attempting to drive a motor vehicle while under the influence of alcohol, while impaired by alcohol, while so far impaired by any drug, any combination of drugs,

We shall hold that, pursuant to Section 16–205.1(b)(2) of the Transportation Article, the administrative law judge's determination that the police officer had reasonable grounds to detain Carpenter was supported by substantial evidence and was not premised upon an erroneous conclusion of law.

At a show cause hearing [3] before Administrative Law Judge A.J. Novotny, Officer Pirritano of the Elkton Police Department testified how she came to request Carpenter to submit to a chemical breath test. She testified that she was dispatched to investigate a two-car collision in Elkton on May 23, 2010 and, through her investigation and interview of witnesses at the scene, determined that one of the cars involved in the collision, a maroon Ford Truck, was owned by Carpenter, who was also at the scene:

> I work for the Elkton Police Department, it's actually patrol division Squad A. On May 23rd at approximately 2345 hours, or 11:45pm, I was dispatched to route 213 in West Pulaski Highway along westbound Route 40 in reference to an accident with personal injury. Upon arrival there, I made contact with a Maryland state police trooper who was already on scene. He advised it was a, a two-vehicle accident involving a Chevy Cavalier and a maroon color Ford truck.

> I observed that the Cavalier with Maryland registration had extensive disabling damage on the passenger side of the vehicle, also that the victim of that vehicle was being assessed by Singerly Fire Department due to injuries sustained in the accident. I made contact with the victim who

---

or a combination of one or more drugs and alcohol that the person could not drive a vehicle safely, while impaired by a controlled dangerous substance, in violation of an alcohol restriction, or in violation of § 16–813 of this title, and who is not unconscious or otherwise incapable of refusing to take a test, the police officer shall:

\*      \*      \*

(ii) Request that the person permit a test to be taken[.]

**3.** Pursuant to Section 16–205. 1(b)(3)(v)(1), a person may request a hearing before an administrative law judge "to show cause why the driver's license should not be suspended concerning the refusal to take the test ..., and the hearing will be scheduled within 45 days[.]"

was the owner and operator of the Chevy Cavalier. She stated that she wasn't aware of the events. She didn't—couldn't recall them, and was trying to turn into Mc-Donald's.

And then I made contact with several individuals identified as witnesses. And they were Mr. Long—Mr. Vincent Long (phonetic) and Ms. Ann Long (phonetic). They advised they were directly in front of the vehicle that was struck. They went on to say that they had a green light, and they were, they were driving. They saw a truck that was coming pretty fast from the right-hand turn late on westbound Pulaski. They stated that did not see it but they heard it hit the vehicle and thought they were struck, but it didn't—they didn't get hit.

I then made contact with a witness who was identified as Ms. Melissa Hickman (phonetic). She advised she was traveling out of the McDonald's parking lot onto South Bridge Street, and she observed a red truck coming through the red light which hit the car on the passenger side. That car was identified as the Chevy Cavalier that was struck. The truck turned the car completely around and it went up on the grass and hit a sign.

I then motioned to the truck that was down by Seasons which on West Pulaski Highway. There was actually a turn lane to go into Seasons Pizza from westbound Pulaski Highway. And I asked them if that was the truck that they were talking about. They said yes.

I interviewed all of them and concluded the victim, Victim Lovelace (phonetic) was traveling northbound on about 213 or Augustine Herman Highway, passing through the intersection which was at a green light. She was struck on the passenger side of her vehicle by the maroon Ford colored truck which was identified as belonging to Mr. Carpenter. He was identified by his Maryland driver's license.

She was transported to Union Hospital by Singerley. I later made contact with Mr. Carpenter, and he, from witnesses' point of view, seemed that he was traveling at a high rate of speed. I can't conclude whether he was or not. But

I do know that he did make contact with the passenger side of the vehicle, and there was significant damage to his truck as well as the car. His car was towed on scene.

Officer Pirritano further testified that, after making contact with Carpenter, she observed his watery eyes, slurred speech, and dilated pupils; Carpenter also had stated that he was coming from Delaware and had consumed two beers:

> Once I made contact with him, I noted what appeared to be a very, very strong smell of oral mouthwash and that his eyes were very red and watery. His pupils were dilated, and his speech was slurred. I asked him if he had consumed any alcoholic beverages at which time he stated that he had two beers at a cookout, and he was coming from the Fox Run area in Delaware.

Officer Pirritano then administered several field sobriety tests to Carpenter, including recitation of the alphabet, finger dexterity, one leg stand, and the walk and turn test, all of which he failed, and then asked him to submit to a preliminary breath test, which Carpenter refused. She arrested Carpenter for driving under the influence, read to him from the Advice of Rights DR–15 Form,[4] and again requested that Carpenter take a breath test, which he refused:

---

**4.** The DR–15 Form, also known as the "Advice of Rights," is derived from Section 16–205.1(b) of the Transportation Article. *Najafi v. MVA*, 418 Md. 164, 167 n. 3, 12 A.3d 1255, 1257 n. 3 (2011). The DR–15 Form signed by both Carpenter and Officer Pirritano provided, in part:

> You have been stopped or detained and reasonable grounds exist to believe that you have been driving or attempting to drive a motor vehicle under circumstances requireing that you be asked to submit to a test under § 16–205.1 of the Maryland Vehicle Law. In this situation, the law deems that you have consented to take a test to measure the alcohol concentration or drug or controlled dangerous substance content in your system. You may refuse to submit to the test(s), unless you were in a motor vehicle accident resulting in the death of or life-threatening injury to another person.
> Suspension of Your Maryland Driver's License or Driving Privilege: If you refuse to submit to the test ... your Maryland driver's license will be confiscated, you will be issued an Order of Suspension and, if eligible, a temporary license valid for 45 days. The following periods

Once I placed him under arrest, I read him his rights, his Advice of Rights, part of the DR–15. He said he couldn't hear me because of the noise and his shoulder was hurting from the handcuffs, and that was due to his limited flexibility. When I was arresting him, I actually used to [sic] sets of handcuffs, which is not common practice, it's usually one set. He's obviously a very broad-shouldered man. I used two sets of cuffs. And once that was done, he still stated that he couldn't hear, and there was a lot of noise due to the, the ambulance and all the other vehicles on scene, so I transported him to our station, the Elkton Police Department.

The handcuffs were removed and we placed him in the book-in interview room. I then re-initiated the Advice of Rights and proceeded with the same. During that process he was uncooperative stating several times I'm not listening to you until I speak with my lawyer, and advised that he was required to complete—I advised that he was required to complete the Advice of Rights and Request Consent or refusal from him. Upon finishing that, I requested that he consent—the consent or refusal to take the test, and he stated very abrasively that he wasn't going to check it, take the test. I checked the refusal box and advised him to sign the bottom admitting his refusal and consenting to the refusal. That was checked. He continued to be uncooperative stating he wasn't signing anything; therefore he was in

---

of suspension shall be imposed against your license or privilege to drive in Maryland:

\* \* \*

If you refuse to submit to a test: The suspension will be 120 days for a first offense.... If you hold a commercial driver's license (CDL) and were driving a non-commercial motor vehicle when you were stopped, and refuse to submit to a test, your CDL, or privilege will be disqualified for one year for a first offense....

\* \* \*

You Have the Right to Request an Administrative Hearing: You may request an Administrative Hearing at any time within 30 days of the date of the Order of Suspension to show cause why your driver's license or privilege should not be suspended.

a holding cell at our police department until paperwork was completed.

The administrative law judge also received and considered the DR–15 Form, signed by Carpenter, indicating his understanding that his refusal to submit to a chemical breath test would result in a suspension of his driver's license pursuant to Section 16–205.1.[5]

Carpenter's counsel then made a motion that no action be taken, arguing that Officer Pirritano lacked reasonable grounds to believe that Carpenter was driving while under the influence of alcohol because no one testified that he was the driver:

> At this point, I am going to make a motion. I want the Court to take no action. And the reason, the basis for my motion is really fairly simple. I listened very carefully to the testimony of Officer [Pirritano]. And as the Court knows, the burden at this point, at least initially, is to show that the officer had reasonable grounds to believe that my client was driving while under the influence of alcohol.
>
> The officer clearly did not see the accident. The officer did not testify that any of the witnesses saw the defendant driving the motor vehicle. And the officer did not, at least apparently from her testimony, did not ask the question were you the driver of the motor vehicle. So you have Mr. Carpenter on the scene. You have a vehicle, I will concede; that is, she testified, I believe, that it was registered to him. But unfortunately, you don't—we're not in a situation where we have anybody that has testified to the fact that he was the driver of the vehicle.

---

**5.** The Officer's Certification and Order of Suspension, also known as the DR–15A Form, was also submitted during the show cause hearing. Although it contained a "Certification of Police Officer" section where the officer attests to the reasonable grounds to believe the licensee had been driving under the influence, Officer Pirritano did not sign this section of the form. The administrative law judge, therefore, did not consider the DR–15A Form in determining whether Officer Pirritano had reasonable grounds to believe Carpenter had been driving or attempting to drive while intoxicated.

Now, the next, I guess the next part of the analysis, then, technically, would be is there a reasonable inference from which you could derive that he was the driver of the vehicle. Well, I would suggest to you that the fact that he's on the scene himself could mean that he was the—at this point, without anything further, he could—you could just as easily infer that he was a passenger as you could that he was a driver. You know, it certainly would not have been difficult to have asked one of the witnesses to say was this gentleman the driver of the vehicle. But that is not apparent from the testimony we have in front of the Court today.

And you have to rely upon what's in the four corners of the testimony and the documents. And I would suggest at this point that there simply is, is no evidence from which you could deduce or infer that, in fact, he was driving, which is part of that reasonable, reasonable basis to believe that he was driving under the influence.

The administrative law judge denied Carpenter's motion because the officer could reasonably infer that Carpenter was driving, explaining:

We're not dealing with a court proceeding of beyond a reasonable doubt, it's just reasonable grounds. And I still think it gets into reasonable inference . . .

and in a written decision, the administrative law judge concluded that Officer Pirritano had reasonable grounds to believe Carpenter had been driving while intoxicated:

### FINDINGS OF FACT

**After considering the evidence and testimony presented in this case, I find by preponderance of the evidence the following facts:**

1) The police officer who stopped or detained Licensee had reasonable grounds to believe that Licensee was driving or attempting to drive a motor vehicle while under the influence of or impaired by alcohol, drugs, a controlled dangerous substance, or any combination of the aforementioned, or in violation of an alcohol restriction, or in violation of MD

CODE ANN., TRANSP. II § 16–813 based on the following:

*Stop/inquiry 5/23/10 for investigation of accident. Licensee a driver * 2 officers involved—OK (McDorman/Bryant cases) Not shown bad faith*

*witness information was considered*

2) There was evidence of the use of alcohol, drugs, controlled dangerous substances, or any combination of the aforementioned based on the following:

*Strong odor of alcohol/mouthwash. Watery eyes + slurred speech. Clues on same SFST (w + s; OLS). Admitted drinking earlier.*

\*     \*     \*

### OTHER FACTS [IF NEEDED]

*MVA Witness: Ofc Pirritano # 255 appeared*

*\* Motion for No action: Not identified as driver. Reasonable inference of being the driver (officer's statements). Denied: Officer's testimony presented reasonable grounds to believe Licensee had been driving for refusal issue. Licensee declined to testify.*

Carpenter's driving privileges were suspended, for 120 days, but the administrative law judge stayed the suspension, provided Carpenter participate in the Ignition Interlock Program for 12 months, and disqualified Carpenter from driving a commercial vehicle for one year pursuant to Section 16–812 of the Transportation Article.[6]

---

**6.** Section 16–812 of the Transportation Article, Maryland Code (1977, 2009 Repl.Vol.) provides, in pertinent part:

(a) *Grounds for disqualification.*—The Administration shall disqualify any individual from driving a commercial motor vehicle for a period of 1 year if:

\*     \*     \*

(3) The individual, while driving a commercial motor vehicle or while holding a commercial driver's license, refuses to undergo testing as provided in § 16–205.1 of this title or as is required by any

Carpenter then sought judicial review of the administrative law judge's decision in the Circuit Court for Cecil County. The Circuit Court found that the evidence was "replete with indications" that Carpenter had been drinking, but observed that the Officer Pirritano had not established that Carpenter had been drinking and driving:

> The evidence was that there was an accident between two vehicles; that one of the vehicles involved in the accident was registered to Mr. Carpenter, the appellant; and that Mr. Carpenter apparently was in the area of the accident at the time that the Officer encountered him. But as I'll mention in a minute, there is not evidence where that was, whether it was a block away from the accident or whether it was right up against the vehicle or inside the vehicle, or just where that was. But he was in the general vicinity of the vehicle.

The judge determined that, although there was a "97 percent chance" that Carpenter had driven his truck at the time of the accident, nonetheless, Officer Pirritano lacked reasonable grounds to believe that Carpenter was the driver, thereby reversing the suspension of Carpenter's license:

> Now, let me speak about the practical and what very likely the actuality is. In my opinion, just looking at this from a practical standpoint, there is probably about a 97 percent chance that Mr. Carpenter was driving the truck this day that wound up colliding with the small car. That's on the practical side. So the question is, is the record that is established before the hearing officer sufficient for ... [the officer] to decide whether or not there was a reasonable articulable suspicion that Mr. Carpenter was driving.
>
> $*$     $*$     $*$
>
> So just with the fact that an accident happened, that the vehicle was registered to Mr. Carpenter, and that he was in the general area of the accident I don't find is enough. I

---

other state's law or by federal law in the enforcement of 49 C.F.R. § 383.51 Table 1, or 49 C.F.R. § 392.5(a)(2)[.]

don't think it's enough reasonable grounds to show that he was driving the car. On the practical side, 97 percent chance that he was, but as far as the record is concerned, I don't think that there was enough.... I'll reverse the hearing officer.

■ Section 10–222 of the Maryland Administrative Procedure Act, Maryland Code (1984, 2009 Repl.Vol.), § 10–222 of the State Government Article, provides that a court, upon judicial review of an administrative agency's decision may decide to:

(1) remand the case for further proceedings;

(2) affirm the final decision; or

(3) reverse or modify the decision if any substantial right of the petitioner may have been prejudiced because a finding, conclusion or decision:

(i) is unconstitutional;

(ii) exceeds the statutory authority or jurisdiction 10 of the final decision maker;

(iii) results from an unlawful procedure;

(iv) is affected by any other error of law;

(v) is unsupported by competent, material, and substantial evidence in light of the entire record as submitted; or

(vi) is arbitrary or capricious.

In *Maryland Aviation Administration v. Noland,* 386 Md. 556, 873 A.2d 1145 (2005), Judge John C. Eldridge, writing for this Court, outlined the appropriate standard of review of an adjudicatory decision by an administrative agency, as follows:

A court's role in reviewing an administrative agency adjudicatory decision is narrow; it "is limited to determining if there is substantial evidence in the record as a whole to support the agency's findings and conclusions, and to determine if the administrative decision is premised upon an erroneous conclusion of law."

In applying the substantial evidence test, a reviewing court decides "whether a reasoning mind reasonably could have reached the factual conclusion the agency reached." A

reviewing court should defer to the agency's fact-finding and drawing of inferences if they are supported by the record. A reviewing court "must review the agency's decision in the light most favorable to it; ... the agency's decision is prima facie correct and presumed valid, and ... it is the agency's province to resolve conflicting evidence" and to draw inferences from that evidence.

Despite some unfortunate language that has crept into a few of our opinions, a court's task on review is *not* to "substitute its judgment for the expertise of those persons who constitute the administrative agency." Even with regard to some legal issues, a degree of deference should often be accorded the position of the administrative agency. Thus, an administrative agency's interpretation and application of the statute which the agency administers should ordinarily be given considerable weight by reviewing courts. Furthermore, the expertise of the agency in its own field should be respected.

*Id.* at 571–72, 873 A.2d at 1154–55 (footnote omitted) (citations omitted). In applying this standard, we review the decision of the administrative agency, rather than the determination of the lower court, and will defer to the administrative law judge's findings of fact and inferences drawn, insofar as supported by the record. *MVA v. Shea*, 415 Md. 1, 17, 997 A.2d 768, 777 (2010) ("[O]ur role is not to review the Circuit Court's judgment, but rather to review the decision of the ALJ . . . .").

Section 16–205.1 of the Transportation Article, also known as Maryland's Implied Consent Law,[7] provides for the suspen-

---

7. Section 16–205.1(a)(2) of the Transportation Article specifically provides that a person, by driving a motor vehicle on a roadway open to public use, consents to take a test for intoxication if suspected of driving or attempting to drive while under the influence of alcohol:

(a)(2) Any person who drives or attempts to drive a motor vehicle on a highway or on any private property that is used by the public in general in this State is deemed to have consented, subject to the provisions of § § 10–302 through 10–309, inclusive, of the Courts and Judicial Proceedings Article, to take a test if the person should be detained on suspicion of driving or attempting to drive while under the influence of alcohol, while impaired by alcohol, while so far

sion of driving privileges when a driver refuses to submit to a chemical breath test for intoxication. Section 16–205.1(b)(2) defines the process an officer is to follow before requesting that a driver submit to a chemical breath test and requires that the officer have reasonable grounds to believe that the person has been driving or attempting to drive while under the influence of alcohol or drugs, stating:

> (2) Except as provided in subsection (c) of this section, if a police officer stops or detains any person who *the police officer has reasonable grounds to believe is or has been driving or attempting to drive a motor vehicle while under the influence of alcohol,* while impaired by alcohol, while so far impaired by any drug, any combination of drugs, or a combination of one or more drugs and alcohol that the person could not drive a vehicle safely, while impaired by a controlled dangerous substance, in violation of an alcohol restriction, or in violation of § 16–813 of this title, and who is not unconscious or otherwise incapable of refusing to take a test, the police officer shall:

> (i) Detain the person;

> (ii) Request that the person permit a test to be taken;

> (iii) Advise the person of the administrative sanctions that shall be imposed for test results indicating an alcohol concentration of at least 0.08 but less than 0.15 at the time of testing;

> (iv) Advise the person of the administrative sanctions, including ineligibility for modification of a suspension or issuance of a restrictive license unless the person participates in the Ignition Interlock System Program under § 16–404.1 of this title, that shall be imposed for refusal to take the test and for test results indicating an alcohol concentration of 0.15 or more at the time of testing; and

---

impaired by any drug, any combination of drugs, or a combination of one or more drugs and alcohol that the person could not drive a vehicle safely, while impaired by a controlled dangerous substance, in violation of an alcohol restriction, or in violation of § 16–813 of this title.

(v) Advise the person of the additional criminal penalties that may be imposed under § 27–101(x) of this article on conviction of a violation of § 21–902 of this article if the person knowingly refused to take a test arising out of the same circumstances as the violation.

(emphasis added).

■ The Motor Vehicle Administration contends that the administrative law judge was correct in concluding that Officer Pirritano had sufficient reasonable grounds to request that Carpenter take a breath test. Officer Pirritano's investigation following the accident, the Motor Vehicle Administration argues, yielded facts that, taken together, allowed her to reasonably infer that Carpenter had been driving the Ford truck, including: witness statements relaying that Carpenter's truck sped through a red light and hit another car, Carpenter's presence at the scene of the accident, and Carpenter's admission to Officer Pirritano that he had been traveling from Delaware to Elkton. According to the Motor Vehicle Administration, the Circuit Court's conclusion reversing the suspension incorrectly interpreted "reasonable grounds" to require that the arresting officer, or a witness interviewed at the scene, actually having witnessed Carpenter driving the Ford truck.

Carpenter, in support of the Circuit Court's decision, maintains that "reasonable grounds to believe [the arrestee] has been driving" under Section 16–205.1(b)(2) requires that Carpenter be seen actually driving and the administrative law judge's "decision was clearly erroneous in light of the fact that no one identifies Mr. Carpenter as the driver of the vehicle and without that identification a determination cannot be made that there was reasonable grounds to believe he was driving or attempting to drive a vehicle under the influence of alcohol in violation of [Section] 16–205.1." In essence, Carpenter refutes an officer's ability to infer an individual's driving without an eyewitness, or, in the alternative, argues that in this particular case, Officer Pirritano's inference, based on her testimony, was not reasonable.

Under Section 16–205.1, reasonable grounds to believe that an individual has been driving while intoxicated is "a 'common sense, nontechnical conception that considers factual and practical aspects of daily life and how reasonable and prudent people act.' " *MVA v. Shea*, 415 Md. 1, 19, 997 A.2d 768, 778 (2010), quoting *Crosby v. State*, 408 Md. 490, 507, 970 A.2d 894, 903–04 (2009); *see also MVA v. Shepard*, 399 Md. 241, 258–59, 923 A.2d 100, 110 (2007) (concluding that "reasonable grounds" equates to reasonable articulable suspicion, such that "the officer may take the evidence at face value and simply decide whether, if true, it leads to a reasonable belief that an offense has been committed"). Reasonable grounds depends on the totality of the circumstances, including observations, statements of other witnesses and, most notably in this case, the reasonable inferences developed therefrom. *Shea*, 415 Md. at 19, 997 A.2d at 778, citing *Crosby v. State*, 408 Md. 490, 508, 970 A.2d 894, 904 (2009) ("The [reasonable suspicion standard] requires courts to give appropriate deference to the training and experience of the law enforcement officer and to the officer's ability to make reasonable inferences from his or her observations, based on that training and experience.").

The salient issue in this case is whether Officer Pirritano's inference that Carpenter was driving, based upon her observations at the scene of the accident, was reasonable. To be reasonable, an inference must be the application of "common sense, powers of logic, and accumulated experiences in life to arrive at conclusions from demonstrated sets of facts." *Robinson v. State*, 315 Md. 309, 318, 554 A.2d 395, 399 (1989). As we previously have recognized, " '[t]here are *few* facts, including even ultimate facts, that cannot be established by inference.' " *Attorney Grievance v. Walter*, 407 Md. 670, 678, 967 A.2d 783, 788 (2009), quoting *Moore v. State*, 73 Md.App. 36, 45, 533 A.2d 1, 5 (1987) (emphasis added). Judge Charles E. Moylan, Jr., writing for the Court of Special Appeals, similarly illustrated the commonality of drawing reasonable inferences:

From fact A, we infer fact B. From a confession, we infer guilt. From the pulling of a trigger, we infer an intent to harm. From the possession of recently stolen goods, we infer the theft. From the motive, we infer the criminal agency. From the presence of the sperm, we infer the penetration. From the muddy footprints on the living room rug, we infer the unlawful entry. The whole phenomenon of circumstantial evidence is the phenomenon of inferring facts in issue from facts established.

*Evans v. State,* 28 Md.App. 640, 702–03, 349 A.2d 300, 339 (1975), *aff'd* 278 Md. 197, 362 A.2d 629 (1976).

We agree with the administrative law judge that the "officer's testimony presented reasonable grounds to believe [Carpenter] had been driving." Officer Pirritano testified that Carpenter's truck had been involved in a collision, that Carpenter was present at the scene of the accident and that Carpenter admitted to traveling from Delaware to Elkton, Maryland after drinking two beers. It is reasonable to infer that Carpenter had been driving his Ford truck, which was involved in the accident. The Circuit Court judge's application of a standard requiring 100% certainty, which he lacked, at 97%, was an application of an incorrect standard of review.

As a result, we reverse.

**JUDGMENT OF THE CIRCUIT COURT FOR CECIL COUNTY REVERSED; CASE REMANDED TO THAT COURT WITH DIRECTIONS TO AFFIRM THE DECISION OF THE ADMINISTRATIVE LAW JUDGE. COSTS TO BE PAID BY RESPONDENT.**