*Motor Vehicle Administration v. Ariel A. Medvedeff*, No. 15, September 2019 Term. Opinion by Hotten, J.

**MARYLAND TRANSPORTATION ARTICLE— DRIVER'S LICENSES— TEST REFUSAL— ADMINISTRATIVE REMEDIES— IMPLIED CONSENT, ADMINISTRATIVE PER SE LAW—** Pursuant to Md. Code § 16-205.1 of the Transportation Article, the Court of Appeals held that the administrative law judge erred in finding that a detaining officer did not have reasonable grounds to believe that an occupant of the vehicle was driving or attempting to drive while impaired or under the influence of alcohol, when he observed the driver of the vehicle failing to stop at a stop sign, and upon approaching the driver's side of the vehicle, found Respondent seated in the driver's seat, smelling of alcohol. Under the reasonable grounds standard articulated in Md. Code § 16-205.1, Petitioner was not required to prove that Respondent was actually driving or attempting to drive the vehicle while impaired or under the influence of alcohol; instead, Petitioner met its burden because there were sufficient facts based on the surrounding circumstances to support the officer's belief that Respondent was driving or attempting to drive while impaired or under the influence. Accordingly, the Court of Appeals reversed the decision of the Office of Administrative Hearings and the Circuit Court for Carroll County.

Circuit Court for Carroll County
Case No. C-06-CV-18-000090
Argued: October 7, 2019

IN THE COURT OF APPEALS

OF MARYLAND

No. 15

September Term, 2019

_____

MOTOR VEHICLE ADMINISTRATION

v.

ARIEL A. MEDVEDEFF

_____

Barbera, C.J.,
McDonald,
Watts,
Hotten,
Getty,
Booth,
Wilner, Alan M. (Senior Judge,
Specially Assigned),

JJ.

_____

Opinion by Hotten, J.

_____

Filed: December 19, 2019

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

This appeal was taken from a decision of the Circuit Court for Carroll County, which affirmed the decision of an Administrative Law Judge ("ALJ"), holding that an officer did not have reasonable grounds to believe Ariel Medvedeff ("Respondent") was driving or attempting to drive a motor vehicle while impaired, when the officer approached the vehicle following a traffic infraction, observed Respondent sitting in the driver's seat, and smelled alcohol on her breath and person. The Motor Vehicle Administration ("Petitioner") appealed the decision by the ALJ and the circuit court, and presents a single issue for our review:

> Did the administrative law judge err in imposing his credibility determinations and inferences from circumstances at the scene of the drunk driving arrest to make a legal determination that the detaining officer lacked reasonable grounds to suspect that [Respondent], who was seated in the driver's seat after a traffic stop, was driving the vehicle, and therefore the officer could not request that she take an alcohol concentration test under Transportation Article § 16-205.1?

For reasons we shall explain *infra*, we answer that question in the affirmative and reverse the decision of the Circuit Court for Carroll County.

## FACTUAL AND PROCEDURAL BACKGROUND

The administrative show-cause hearing elicited the following facts. On December 30, 2017 at approximately 11:45 p.m., Deputy Kathleen Yox ("Deputy Yox") and another unnamed deputy from the Carroll County Sheriff's Department conducted a routine traffic stop of a vehicle they observed failing to stop at a stop sign in Westminster, Maryland. The vehicle—a Ford F-350 pick-up truck—made a right turn at the stop sign instead of coming to a complete stop. As a result of the traffic infraction, Deputy Yox pulled behind the pick-up truck and attempted to pull the driver over. Upon noticing the police vehicle, the driver

of the pick-up truck traveled for a short distance before turning left into a shopping center parking lot, where Deputy Yox approached the vehicle from behind. At that time, Deputy Yox observed Respondent sitting in the driver's seat. A man, who was later identified during the traffic stop as Anthony Crany ("Mr. Crany"), was seated in the back of the truck, behind Respondent.

Upon approach, Deputy Yox detected the odor of alcohol on Respondent's breath and person. Accordingly, Deputy Yox requested that Respondent exit the vehicle and submit to a series of Standard Field Sobriety Tests ("SFSTs") to ascertain whether she had been driving while under the influence of or impaired by alcohol. Respondent complied with the request to exit the vehicle, while Mr. Crany remained in the backseat.

One of the SFSTs Deputy Yox performed on Respondent was a Preliminary Breath Test. The Preliminary Breath Test sample determined that Respondent had a blood alcohol concentration ("BAC") level of 0.14.[1] Because Respondent's BAC exceeded the legal limit of 0.08, Deputy Yox determined that she was impaired. During the course of administering the SFSTs, the alleged passenger, Mr. Crany, exited the vehicle and approached the other deputy. Mr. Crany insisted that Respondent had not been driving the vehicle when they were stopped. Instead, Mr. Crany alleged that he was the driver and that Respondent agreed to switch seats with him so that it appeared Respondent was driving at the time of the traffic violation. In light of this new narrative, the unnamed deputy

---

[1] A breath test is "[a] test of a person's breath...to determine alcohol concentration." Md. Code (Repl. Vol. 2012), Transportation Article ("TRANSP.") §16–205.1(a)(1)(iii)(1).

2

administered a series of SFSTs on Mr. Crany, which revealed that Mr. Crany was also impaired. Ultimately, both occupants were placed under arrest and transported to the local police station for a breathalyzer test ("breath test"), where Respondent was informed of her right to refuse the test. She was also informed of the potential administrative consequences should she refuse the breath test.[2] After receiving this information and signing the DR-15 "Advice of Rights" form, Respondent refused to submit to the breath test and the officers confiscated her driver's license.[3] Respondent challenged the suspension of her driving privileges before the Office of Administrative Hearings.[4]

*The Administrative Proceeding*

The ALJ heard this case on May 15, 2018 and considered testimony from Respondent and Mr. Crany. Respondent testified that she and Mr. Crany were traveling from a restaurant in Westminster—where they both had been drinking alcohol—when Mr. Crany ran the stop sign. Mr. Crany and Respondent testified that they switched seats "almost immediately" after pulling into the parking lot to avoid negative consequences for Mr. Crany, who was afraid a drunk driving arrest would interfere with his security

---

[2] "Once a law enforcement officer has detained a suspected drunk driver, the officer is to advise the detainee, among other things, of the possible administrative sanctions for refusal to take the breath test and for test results that show a blood alcohol concentration above certain levels." *Motor Vehicle Admin. v. Krafft*, 452 Md. 589, 594, 158 A.3d 539, 542 (2017) (citing [TRANSP.] § 16-205.1(b)(2)). The officer meets this requirement by "reading, and providing the driver with, a form created by the MVA for that purpose, known as the DR-15 [or Advice of Rights] form." *Id.*

[3] An officer is to confiscate the driver's license if the individual refuses to take the test or, alternatively, complies with the request and fails. TRANSP. § 16-205.1(b)(3).

[4] TRANSP. § 16-205.1(f)(1).

clearance at work. They alleged that Mr. Crany stopped in the parking lot, turned the vehicle off, and climbed over the center console into the backseat with the car keys, while Respondent entered the driver's seat. Both parties also testified that Mr. Crany exited the vehicle as Respondent began the field sobriety tests and advised the other deputy on the scene that Respondent had not been driving. Respondent testified that, after she had observed Mr. Crany exit the vehicle and advise the other deputy that he had been the one driving, Respondent confirmed Mr. Crany's assertion to Deputy Yox. Respondent maintained that she had not operated the vehicle that evening. Deputy Yox and the other deputy on the scene did not appear or testify at the show-cause hearing to corroborate or contradict this version of events.

Respondent then moved, through counsel, for "No Action,"[5] arguing that the deputies did not observe her driving or attempting to drive, and merely sitting in the driver's seat of a motor vehicle while impaired or under the influence is not sufficient for a driving under the influence ("DUI") arrest. Respondent further argued that it was not possible for her to operate or attempt to operate the vehicle while intoxicated because the truck had been stopped when Deputy Yox observed her sitting in the driver's seat, and the keys were in the backseat with Mr. Crany at that time. The ALJ interpreted the Motion for No Action as a motion "based on [the] argument that the MVA has failed to meet its burden of proving by a preponderance of the evidence that the Licensee was driving or attempting to drive[,]"

---

[5] "If the ALJ finds that the criteria [under TRANSP. § 16-205.1] has not been met, the ALJ takes "no action"—*i.e.*, overturns the suspension." *Krafft*, 452 Md. at 596, 158 A.3d at 543 (citing COMAR 11.11.02.07A).

4

and clarified that the appropriate standard in a test refusal case is whether the detaining officer has reasonable grounds to believe the Licensee was driving or attempting to drive. *See Krafft*, 452 Md. at 607–08, 158 A.3d at 550.

At the conclusion of the evidence, the ALJ determined that the investigating officers did not have reasonable grounds to believe Respondent was operating or attempting to operate a motor vehicle[6] at the time she was detained and asked to submit to a breathalyzer, as required under TRANSP. § 16-205.1(b). The ALJ reached this conclusion based on the "credible" testimony of Respondent and her witness, Mr. Crany, as well as the DR-15A certification prepared by Deputy Yox. Specifically, in his findings of fact and conclusions of law, the ALJ stated that he found the following by a preponderance of the evidence:

> The Officer did not have reasonable grounds to believe that the Licensee was driving or attempting to drive at the time that the officer requested that the Licensee take the test. The Licensee testified, and a corroborating witness who was present, testified credibly that she did not drive the vehicle at all on the date of the incident. The Licensee got behind the wheel after the vehicle was stopped by the police officer for a traffic violation. She was then asked to exit and perform SFSTs, which she failed. She does not dispute that she consumed alcohol on the evening in question. While she was performing SFSTs, the passenger exited the vehicle and indicated to another police officer who was present at the scene that he had been the one actually driving. He was then subjected to SFSTs, arrested, and transported to the station. While at the station, both the Licensee and the passenger were asked to take the test. At this point in time, the police officer was aware that the passenger had indicated that the Licensee had not been driving, and therefore[,] did not have reasonable grounds at that time to believe that the Licensee had been driving based on the fact that the passenger had told the other officer that he was the driver and had been arrested and also asked to take a test, which he consented to. Other indicia that the police officer did not have reasonable grounds to believe the Licensee was driving include the fact that the keys

---

[6] TRANSP. § 11-114 defines "drive" as "to drive, operate, move, or be in actual physical control of a vehicle, including the exercise of the control over or the steering of a vehicle being towed by a motor vehicle."

5

were in the possession of the passenger, who was in the back seat when the police officers came upon the car.

The ALJ accepted Respondent and Mr. Crany's testimony that the vehicle was turned off and the keys were in the backseat with Mr. Crany when Deputy Yox initiated the traffic stop. Accordingly, the ALJ found that the officers could not have reasonably believed Respondent was driving when they approached the vehicle. The ALJ also found that the police were "aware" that Mr. Crany was driving when they arrived at the police station and asked Respondent to submit to a breathalyzer. The ALJ found that there could not have been reasonable grounds to believe she was driving at the time the breathalyzer would have been administered because the deputies knew, before arriving at the station, that Mr. Crany and Respondent had "switched operation of the vehicle," and Mr. Crany was the driver at all relevant times—not Respondent. In rendering findings of fact and conclusions of law, the ALJ relied heavily on the DR-15 incident report/certification that Deputy Yox prepared, which stated that the officers found "through investigation that passenger [and] driver switched operation of the vehicle." Based on these findings, the ALJ took "no action" on the order of suspension and Respondent's driving privileges were reinstated.

### The Circuit Court Proceeding

Petitioner sought judicial review of the ALJ's determination that, at the time Respondent was asked to submit to the chemical breath test, the officers were "aware that the passenger had indicated that [Respondent] had not been driving and therefore did not have reasonable grounds." The Circuit Court for Carroll County upheld the ALJ's

6

determination, finding that the incident report was "pivotal" to the final decision because it reflected that the passenger and driver had switched positions. The circuit court also upheld the ALJ's credibility finding. In reviewing the "credible testimony of the witnesses" in conjunction with the incident report and officer certification, the circuit court found that it was reasonable for the ALJ to reach this conclusion. The Motor Vehicle Administration subsequently petitioned this Court to review the decision of the administrative agency pursuant to Md. Code (Repl. Vol. 2012), § 12-305 of the Courts and Judicial Proceedings Article.

## STANDARD OF REVIEW

In reviewing the decision of an administrative agency, this Court "look[s] through" the decision of the circuit court and directly evaluates the decision of the agency. *Brutus 630, LLC v. Town of Bel Air*, 448 Md. 355, 367, 139 A.3d 957, 964 (2016). We review the legal conclusions of an administrative agency *de novo*, "accord[ing] some weight to an [administrative] agency's interpretation and application of a statute that it administers." *Krafft*, 452 Md. at 603, 158 A.3d at 547 (citing *Motor Vehicle Admin. v. Shea*, 415 Md. 1, 15, 997 A.2d 768, 776 (2010)).

Findings of fact, however, are reviewed based on "substantial evidence" from the record. *Id*. Under the "substantial evidence" test, a reviewing court looks at the relevant evidence to determine "whether a reasoning mind reasonably could have reached the factual conclusion the agency reached." *CashCall, Inc. v. Md. Comm'r of Fin. Regulation*, 448 Md. 412, 426, 139 A.3d 990, 999 (2016) (citation omitted). While the reviewing court is tasked with assessing whether the evidence is sufficient to support the administrative

7

agency's final determination, the reviewing court should *not* "substitute its judgment for the expertise of those persons who constitute the administrative agency [from which the appeal is taken]." *Gigeous v. E. Correctional Inst.*, 363 Md. 481, 496, 769 A.2d 912, 922 (2001) (citing *United Parcel Serv., Inc. v. People's Counsel for Balt. Cty.*, 336 Md. 569, 596–97, 650 A.2d 226, 230 (1994). "The reviewing court also must review the agency's decision in the light most favorable to the agency, since decisions of administrative agencies are prima facie correct and carry with them the presumption of validity." *Balt. Lutheran High Sch. v. Emp't Sec. Admin.*, 302 Md. 649, 662–63, 490 A.2d 701, 708 (1985). It is the responsibility of the administrative agency to review the record and reach a logical conclusion, "but where inconsistent inferences from the same evidence can be drawn, it is for the agency to draw the inferences." *Id*.

## DISCUSSION

Before this Court, Petitioner argued that the ALJ allowed Respondent to litigate the issue of the identity of the driver at the show-cause hearing and substituted the judgment of the ALJ for that of the detaining officer. Petitioner contends that, in doing so, the ALJ ignored the officer's professional assessment of the situation and focused on the testimony of Respondent and her witness. Petitioner further argued that the ALJ's reliance on his own interpretation of the officer certification in reaching the conclusion that Deputy Yox lacked reasonable grounds to believe Respondent was driving or attempting to drive a vehicle while impaired or under the influence of alcohol was improper. An Amicus Curiae supported the Respondent's position in brief and in oral argument, contending that the ALJ did not exceed his authority in weighing the credibility of Respondent and Mr. Crany to

8

reach his final conclusion that Deputy Yox lacked reasonable grounds to request the breath test.[7]

***Reasonable Grounds in Test Refusal Cases***

At a license suspension hearing in a test refusal case, the ALJ assesses: (1) whether the officer had reasonable grounds to believe the licensee was driving or attempting to drive, (2) whether there was evidence of alcohol intoxication or impairment, (3) whether the officer advised the licensee of their rights in accordance with the statute, and (4) whether the licensee refused the breathalyzer after being made aware of those rights. TRANSP. § 16.205.1(f)(7)(i)(1)–(4). Factors two through four are not in dispute. Accordingly, our consideration is focused on whether the detaining officer had reasonable grounds to believe Respondent had been driving or attempting to drive while impaired or under the influence of alcohol. Petitioner relies on *Motor Vehicle Administration v. Krafft* in support of its claim that the ALJ "committed legal error" by failing to view the circumstances and reasonableness of the request for a breathalyzer from the perspective of the investigating officer. We agree.

Instead of assessing the reasonableness of the request for the breathalyzer, the ALJ focused the inquiry on who was actually driving the vehicle when Deputy Yox initiated the stop. Although the ALJ was careful to differentiate between the preponderance of the evidence standard Respondent relied on at the show-cause hearing, and the reasonable grounds standard this Court clarified and applied in *Krafft*, the ALJ's final determination

---

[7] Respondent did not file a response to Petitioner's brief or participate in oral argument before this Court.

9

that the deputies lacked reasonable grounds to suspect Respondent was driving while impaired or under the influence of alcohol was premised on whether the ALJ believed Respondent was, in fact, the driver of the vehicle. The ALJ allowed Respondent and her witness, Mr. Crany, to testify regarding who had been driving when the traffic violation was committed and based his final conclusion, in large part, on their "credible" testimony. However, the officer's belief that Respondent was driving was reasonable because, almost immediately after observing the traffic violation, Respondent was observed sitting in the driver's seat. Moreover, Deputy Yox smelled alcohol on her breath and person and Respondent failed a series of sobriety tests, including a preliminary breath test. Therefore, the ALJ erred in finding the officers lacked reasonable grounds, in light of the evidence presented.

In *Krafft*, this Court held that there is no requirement that the responding officer prove that the person who refused the sobriety test had, in fact, been driving or attempting to drive the motor vehicle while impaired pursuant to the "implied consent, administrative per se law."[8] TRANSP. § 16-205.1 (authorizing law enforcement to request that an

---

[8] TRANSP. § 16-205.1 is also known as the "implied consent, administrative per se law." *See Krafft*, 452 Md. at 592–94, 158 A.3d at 541–42 ("[The implied consent, administrative per se law] authorizes a law enforcement officer to request a suspected drunk driver to submit to a chemical test to determine blood alcohol content in certain circumstances. If the test shows a blood alcohol concentration above a certain amount, or if the individual refuses to take the test, an administrative suspension of the individual's driving privileges follows. [T]he statute provides that anyone who drives (or attempts to drive) a motor vehicle in Maryland 'is deemed to have consented' to take a breath test to determine blood alcohol concentration 'if the person should be detained on suspicion of driving or attempting to drive while under the influence of alcohol.'")(footnote omitted).

individual they reasonably believe is operating or attempting to operate a motor vehicle while under the influence of or impaired by alcohol submit to a breath test). There, this Court reviewed the administrative decisions in two separate test refusal cases. In each case, the administrative law judge overturned the suspension of driving privileges, finding that it was not proven by a preponderance of the evidence that the individuals who refused the breath test were actually driving the vehicle at the time. This Court rejected that conclusion, clarifying that the reasonable grounds standard under TRANSP. § 16-205.1 does not require proof of driving by a preponderance of the evidence.[9] *Krafft,* 452 Md. at 607, 158 A.3d at 549–50 ("[A] showing that an officer had [] *reasonable grounds to believe* that something is true is different from proving by a *preponderance of the evidence* that it was true.").

"[A] suspension for a test refusal is to be upheld only if the law enforcement officer who detained the suspected drunk driver had 'reasonable grounds to believe' that the individual was driving (or attempting to drive the vehicle) while impaired by alcohol." *Id.* at 596, 158 A.3d at 543. In a test refusal case, an officer must have reasonable grounds to believe the licensee was driving or attempting to drive a vehicle while impaired, thereby triggering the implied consent law, *before* they can request the breathalyzer. *Id.* In such

---

[9] "To the extent that a preponderance of evidence standard can be said to apply at an administrative license suspension hearing, it is that the [Motor Vehicle Administration] must show by a preponderance of the evidence that the officer had reasonable grounds at the time the officer requested the test. This is not the same thing as a showing, by a preponderance of evidence, that the individual was in fact driving (or attempting to drive) while impaired." *Id.* at 608, 158 A.3d at 550.

cases, reasonable grounds equates to "reasonable articulable suspicion." *Motor Vehicle Admin. v. Shepard*, 399 Md. 241, 254, 923 A.2d 100, 107 (2007). We have stated that reasonable articulable suspicion is a "common sense, nontechnical conception that considers factual and practical aspects of daily life and how reasonable and prudent people act." *Shea*, 415 Md. at 19, 997 A.2d at 778 (citing *Crosby v. State*, 408 Md. 490, 507, 970 A.2d 894, 903–04 (2009)). Reasonable articulable suspicion (or reasonable grounds under TRANSP. § 16-205.1) is a considerably lower burden than the probable cause required for an arrest. It requires "less in the way of quantity and quality of evidence[.]" *Id.* Reasonable suspicion is a totality of the circumstances inquiry that must be based on more than a "hunch" or an unparticularized set of facts. *Id.* As is the case in the criminal law context,[10] the circumstances surrounding the request for a breath test are "viewed through the eyes of a reasonable, prudent, police officer." *Sellman v. State*, 449 Md. 526, 542, 144 A.3d 771, 781 (2016) (citing *Bost v. State*, 406 Md. 341, 356, 958 A.2d 356, 365 (2008)). As such, when determining whether an officer has a reasonable articulable suspicion, "[a] factor that, by itself, may be entirely neutral and innocent, can, when viewed in combination with other circumstances, raise a legitimate suspicion in the mind of an

---

[10] Although TRANSP. § 16-205.1 is a civil statute, we have applied the criminal law concept and definition of reasonable articulable suspicion to test refusal cases under this statute. *See Krafft*, 452 Md. at 607, 158 A.3d at 550 (stating that "[t]his Court has interpreted the 'reasonable grounds' standard to mean 'reasonable articulable suspicion'"); *Shepard*, 399 Md. at 254, 923 A.2d at 107 (finding that reasonable grounds equates to a reasonable articulable suspicion); *see also, Shea*, 415 Md. at 16, 997 A.2d at 776-77 (clarifying that, despite this Court's consistent holding that 'reasonable grounds' equates to the Fourth Amendment quantum of suspicion in criminal law[,]" the statute should not be treated or viewed as "quasi-criminal.").

experienced officer." *Id.* at 543, 144 A.3d at 781 (citing *Crosby*, 408 Md. at 508, 970 A.2d at 904).

For example, in *Motor Vehicle Administration v. Carpenter*, we addressed the "salient issue" of whether the arresting officer in that case *reasonably* inferred from her observations at the scene of a car accident, that Mr. Carpenter was driving while impaired or under the influence of alcohol. 424 Md. 401, 416, 36 A.3d 439, 448 (2012). After being dispatched to the scene of a two-car accident on West Pulaski Highway, an officer from the Elkton Police Department observed damage to a Chevrolet Cavalier and a Ford truck. *Id.* at 404, 36 A.3d at 441. The officer determined, after observing the damage to the Ford truck, which was registered in Mr. Carpenter's name, and speaking with eye witnesses at the scene, that Mr. Carpenter had been driving the truck at the time of the accident. *Id.* at 404–06, 36 A.3d at 441–42. The officer also determined Mr. Carpenter was intoxicated because, upon approaching him, she noticed his "watery eyes, slurred speech, and dilated pupils[.]" *Id.* at 406, 36 A.3d at 442. Mr. Carpenter also admitted to consuming two beers earlier that evening. *Id.* After this admission and observation, the officer administered several of the SFSTs, which Mr. Carpenter failed. *Id.* The ALJ determined—based on the officer's testimony regarding what she observed at the scene of the accident—that the officer had the requisite reasonable grounds to believe Mr. Carpenter was driving, despite not having seen Mr. Carpenter operating the vehicle. *Id.* at 404, 36 A.3d at 441. The circuit court overturned the ALJ, finding that the officer who detained Mr. Carpenter and requested the breath test did not have reasonable grounds to do so. *Id.* at 403, 36 A.3d at 440. We agreed with the ALJ and reversed the circuit court, holding that, taken together,

13

the officer's observations led her to infer that Mr. Carpenter was intoxicated and had been driving his vehicle when the accident occurred, and such an inference was reasonable. *Id.* at 416, 36 A.3d at 448.

Here, Deputy Yox similarly had reasonable grounds to believe Respondent was driving under the influence of alcohol, even though she did not see Respondent operating the vehicle. When Deputy Yox approached the vehicle after pulling Respondent and Mr. Crany over, she saw Respondent sitting in the driver's seat. Upon interacting with Respondent, Deputy Yox determined that her breath smelled of alcohol. She also smelled alcohol on Respondent's person. After requesting that Respondent exit the vehicle, Deputy Yox administered standard field sobriety tests, which included a preliminary breath test. The results of the preliminary breath test revealed a BAC level of 0.14—well over the legal limit. Respondent also failed the other SFSTs. Considering the Respondent's poor performance on the sobriety tests and her position in the driver's seat when the officer approached, Deputy Yox's belief that Respondent was driving when she observed the Ford pick-up truck failing to stop at the stop sign was reasonable. The fact that Deputy Yox did not offer any testimony before the ALJ is immaterial to the determination of whether she had reasonable grounds to believe, based on her observations at the scene, that Respondent was driving the vehicle. Even if Deputy Yox accepted the narrative presented by Mr. Crany, Respondent positioned herself as the driver of the vehicle shortly after the operator of the vehicle was observed committing a traffic violation. It was not unreasonable for Deputy Yox to infer from Respondent's positioning that she was driving or attempting to

14

drive. Deputy Yox was not required to ignore these observations and accept the narrative presented by Respondent and Mr. Crany as truth.

The ALJ erred in effectively second guessing the professional judgment of the detaining officer, absent evidence that the officer did not have reasonable grounds to believe Respondent was driving under the influence or impaired by alcohol. *See Shea,* 415 Md. at 19, 997 A.2d at 778 ("The analysis requires courts to give appropriate deference to the training and experience of the law enforcement officer and to the officer's ability to make reasonable inferences from his or her observations, based on that training and experience.") (internal citations omitted). Although the ALJ seemed to believe that the certification indicated the officers believed Respondent and Mr. Crany attempted to deceive the officers by switching positions in the vehicle, the use of the phrase "switched operation of the vehicle" does not lend itself to a finding that the detaining officers did not believe Respondent was driving the vehicle that night, or that it was unreasonable for them to suspect Respondent was driving under the circumstances. The issue of who was, in fact, driving the vehicle at the time of the traffic stop is irrelevant to the question of whether the officer reasonably believed or could have reasonably inferred Respondent was driving or attempting to drive from the surrounding circumstances, because Petitioner need only prove that a reasonable officer could reach this conclusion. Even if Deputy Yox was uncertain regarding whether Mr. Crany or Respondent was driving at the time of the traffic violation, the applicable standard does not require *certainty*—it is enough that Deputy Yox could infer that Respondent was driving from her observations at the scene.

15

## CONCLUSION

For the reasons discussed *supra*, we hold that Deputy Yox had reasonable grounds to suspect Respondent was driving or attempting to drive while impaired or under the influence of alcohol. In accordance with the principles we articulated in *Krafft*, Petitioner was not required to prove the fact of driving. Instead, we assess whether the detaining officer had reasonable grounds to believe, based on the facts and circumstances presented, that Respondent was driving or attempting to drive while impaired or under the influence. Thus, we find that the ALJ erred in granting the Motion for No Action.

**JUDGMENT OF THE CIRCUIT COURT FOR CARROLL COUNTY REVERSED WITH INSTRUCTIONS TO REMAND THE CASE TO THE OFFICE OF ADMINISTRATIVE HEARINGS FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY RESPONDENT.**